IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ARTHUR LOWE #669750 | § | |
| v. | § | CIVIL ACTION NO. 6:10cv176 |
| NANCY DAVENPORT, ET AL. | § | |

<u>MEMORANDUM OPINION AND ORDER OF DISMISSAL</u>

The Plaintiff Arthur Lowe, an inmate currently confined in the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil action complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. §636(c). The named Defendants in the case are Nancy Davenport, a clinical nurse specialist, and Robert Criss, a licensed professional counselor who is the mental health practice manager at the Michael Unit.

In his complaint and at an evidentiary hearing, Lowe says that he is a psychiatric patient, but that he is allergic to all medications provided by TDCJ except for Wellbutrin and Effexor. However, he says, Nancy Davenport, a psychiatric nurse practitioner, prescribed him Zoloft and other medications that he could not take. He began to get sick and went back to see Davenport, who took him off the Zoloft, but then put him on another medication, Desipramine, that he was also unable to take. He again began to get sick, and so Davenport saw him again and put him on a medication called Celexa, which she had previously taken him off of at the request of other medical providers.

When the Celexa began making him sick, Lowe said, he contacted the medical department and was given medication and a liquid diet, and referred to a physician named Dr. Gary Wright. Dr. Wright told Davenport to take Lowe off Celexa, but apparently this did not happen.

1

Lowe says that his condition continued to worsen, to the point that he was throwing up in the dayroom. He says that he could not go to the infirmary that day but was sent the next day. Dr. Wright again told Davenport that the Celexa had to be discontinued, and it was; however, Lowe says that he received notice from Davenport that since he had rejected every formulary antidepressant, the Celexa would be discontinued without replacement.

Lowe also says that he wrote to the mental health care manager, Robert Criss, complaining that Davenport had discontinued his antidepressants without replacing them. Criss came to see him, but told him that it was up to the provider, Davenport.

Criss was also present at the evidentiary hearing and testified concerning the contents of Lowe's medical records. He stated that virtually every medication given to Lowe caused problems, and that Wellbutrin was no longer formulary. A pharmacist at the Jester IV Unit suggested that Lowe receive "mood stabilizers" rather than "anti-depressants."

Lowe stated in response that he took Wellbutrin for two years and never abused it. He said that he was on Depakote and it "messed him up" to the point that a sign was put up at the pill window saying that he was not to get any. He said that anti-depressants always worked better for him and that he did not want to go to Jester IV, indicating that he had been there when his mother was killed.

Lowe's Medical Records

The Court has received and reviewed copies of Lowe's medical records. In so doing, the Court has taken Lowe's pleadings and testimony as true, and will disregard any portion of the medical records which factually contradict these pleadings and testimony. *See generally* Wilson v. Barrientos, 926 F.2d 480, 482-83 (5th Cir. 1991).

In October of 2008, the records show Davenport wrote a note saying that she hesitated to change Lowe's medications because he had spent four years at the Jester IV Unit and had done best on Haldol. She noted that she looked through his records and could find noting about a medication called Navane, and that she was considering changing him to Navane PO (i.e. by mouth).

Lowe was next seen by Davenport on June 5, 2009. At that time, he said that he was still hearing some voices, but that he felt better with the Navane, and that the Celexa was as good as anything that he had taken for depression. On June 23, however, he said that he had a problem with his medication, and that he wanted the Celexa changed back to Wellbutrin. He was told that at that time that Wellbutrin was not an option because it was no longer formulary.

On July 2, 2009, Lowe saw Davenport, who noted that Lowe was insisting that Davenport had prescribed him medications called doxozosin and oxybutynin, which are for prostate and bladder conditions and are not psychiatric medications, when in fact these medications were prescribed by the medical department. She stated that Lowe's aim in talking to her was to have the Celexa discontinued, even though he had taken it for several years without problems and that he had complained of urinary tract problems before he started taking antidepressants. Davenport stated that she finally agreed to change his medication to Zoloft.

On July 15, 2009, Lowe complained that the Zoloft was messing with his stomach. He told a case worker named Patricia Odiaka that Davenport had told him to get with her if the Zoloft did not work and that she would get him put in for Wellbutrin, but Odiaka said that the medical records did not reflect this. Lowe replied that "she did tell me and I don't think she wrote it down."

On July 24, Lowe was seen by Davenport complaining of gastrointestinal distress caused by the Zoloft. She noted that he had been put on Zoloft because Lowe wanted Wellbutrin and Zoloft had similar dopaminergic qualities; she said that Lowe was ineligible for Wellbutrin because of his psychosis. Davenport said that she told Lowe in answering a request form that he had been taking the Zoloft for less than a month and had done well on it previously, and that he had done well on Celexa until he insisted that it be discontinued. Davenport told Lowe that she would never have promised him Wellbutrin because it is no longer approved and his psychotic symptoms would make him ineligible. She suggested that he continue taking Zoloft and that if things were not better by August 10, she would change him back to Celexa.

On August 14, Lowe saw Davenport and complained that he was having trouble with his medications regarding his ability to urinate. He said that the medical department told him that the Zoloft was causing this problem, but Davenport said that he had the same problem with other medications and even when he was taking no psychiatric medications. When Davenport told him that he had been through just about every medication available and that she would decrease his Navane because it could contribute to his problems, Lowe stated that he "did not want to mess with my psych meds."

That same day, Lowe saw Odiaka and told her that he had been seen by Davenport and was not happy with the outcome. He denied ever saying that he had been promised Wellbutrin and that he wanted the Navane left alone, as well as more of a medication called cogentin. Odiaka said that Davenport had made a medical decision, and Lowe stated that he was going to send another I-60 inmate request form to Davenport.

On September 25, 2009, Lowe saw Odiaka and told her that "he was not feeling good, voices and depression medication messing with me." He complained that the mid-level practitioner, Davenport, gave him too much Navane but no cogentin to go with it. Odiaka told him that his request would be passed on to the mid-level practitioner, with no promises of outcome, and discussed with him how to handle the voices.

Lowe was subsequently prescribed another anti-depressant, Desipramine. On October 9, 2009, he saw a counselor named Sandra Farrar and told her that the Desipramine was causing round spots on his arms and face. Farrar noted that Lowe had been on Haldol and Wellbutrin at the Jester IV Unit, but was told that he could not take Wellbutrin with an antipsychotic. Since then, he has been prescribed antidepressants called Prozac, Pamelor, Celexa, Zoloft, and now Desipramine. He told Farrar that he was not asking for Wellbutrin or any other specific medication, he just wanted "something that would help." He said that Dr. Thompson had mentioned Effexor, but Farrar told him that Effexor was non-formulary. She said that she would check into the possibility of a referral to Davenport.

One week later, on October 16, Lowe saw Davenport. She set out Lowe's medical history, saying that he had spent much of the past ten years in an inpatient setting and that he had a long history of severe psychiatric illness both in the free world and in TDCJ. His current diagnosis is psychoaffective disorder. Davenport noted that Lowe had been through all available antidepressants and complained of problems with each of them. The latest medication, Desipramine, was supposedly causing round spots on his limbs; Davenport said that the medical department could not find a cause for these spots and told him that it was probably the Desipramine, even though this was not a known side effect.

That same day, Davenport noted in the medical records that Lowe continued to grieve for his mother, who was murdered in 2001, and his daughter, who died of cancer in 2002, using this as a basis for a continued need for antidepressants. However, she said, he has rejected every formulary antidepressant for side effects; at one time, he wanted Wellbutrin, but now is asking for Effexor, a medication that one of the doctors mentioned to him. Davenport stated that given the prevalence of the side effects, she did not believe that he would be able to tolerate Effexor either. Lowe was adamant about not going back on Celexa even though he had previously done well on it for two years. Davenport said that she agreed to submit a request for Effexor, which is non-formulary, that she would decrease the dosage of Desipramine, and that she would discontinue the sertraline (Zoloft).

On November 16, 2009, Lowe saw Farrar and complained about the Desipramine causing bumps on his arms, as well as diarrhea and decreased appetite. Farrar told him that they were still waiting to hear about the request submitted by Davenport for Effexor, and Lowe agreed to continue taking Desipramine until this decision was made,

That same day, Davenport contacted an individual named Norina Dingas about the request for Effexor, saying that Lowe had tried and failed all formulary antidepressants because of reported side effects. She said that Celexa was effective but intolerable and that the medical department had suggested Effexor. On November 17, Lowe was seen at sick call by Davenport with a complaint

about side effects from Desipramine and asking about Effexor. She suggested restarting Celexa and possibly changing Navane to Risperidone, and stopping the cogentin because that can have a negative effect upon moods. A note appears in the record saying that the request for Effexor had been denied because Lowe had a history of doing well with Celexa. She said that although Lowe did not want to restart the Celexa, he had rejected all other antidepressants and the Celexa had been effective; she noted that side effects of antidepressants were made worse by not taking the medications regularly because of fluctuations in the serotonin levels. Davenport did discontinue the Desipramine and gave Lowe a prescription for Celexa.

On December 12, 2009, Lowe complained at sick call that he was suffering gastrointestinal problems, and he was given medication called bismuth subsalycilate, an antidiarrheal medication. On January 6, 2010, he saw Davenport, who noted that Lowe had been through all available antidepressants and had reported intolerable side effects with each of them, including "round spots" from Desipramine. She stated that Lowe had requested Wellbutrin and Effexor, but the request for Effexor was deferred because he had a history of doing well on Celexa for some two years. Davenport further said that while Lowe had been complaining about gastrointestinal problems recently, he had made the same complaints about various different antidepressants. And it was unlike that they all caused the same reaction unless these reactions were the result of increased levels of serotonin, which would make any antidepressant contraindicated except for Wellbutrin, which Lowe cannot take because of a history of psychosis. She said that her plan was to stop Celexa without replacing it, and to discontinue the cogentin so he could again take oxybutynin. Davenport also said that while Lowe was prescribed Navane, the levels of that medication were very low so it appeared that he was not taking it, and she would order one more level before discontinuing it.

Davenport indicated that she would write Lowe a letter saying that the problems which he described are the same ones which he had complained of when taking other antidepressants, and when taking none at all, and that it is highly unlikely that every antidepressant except for Wellbutrin would cause the same symptoms. Because Lowe had rejected every formulary antidepressant, the

Celexa would be stopped without replacement, and he had not met the criteria to apply for approval of Effexor again. More labs would be ordered to "try to get to the bottom of what is going on with you."

On February 11, 2010, Lowe was seen by a case worker named David Johnson. Lowe complained of increased auditory hallucinations and depression and believed that his medications needed to be increased. Johnson said that the mid-level practitioner would be informed of Johnson's concerns, with no guarantee of outcome, and that he would be monitored on a monthly basis. On February 3, 2010, Lowe saw Dr. Gary Wright with a complaint of loose stools. He explained that he got intestinal problems whenever he took Celexa, and that he has voiced these concerns with the mental health department but without resolution. Dr. Wright noted that his abdomen was soft and non-tender without hepatosplenomegaly or palpable masses, and normal bowel sounds; he scheduled Lowe for an array of abdominal tests and referred him to the mental health department for possible change of medications. On March 1, Lowe again saw Dr. Wright with the same complaint; the results of the tests appeared normal, and so Dr. Wright referred Lowe to the mental health provider.

Legal Standards and Analysis

Lowe's claim is that Davenport and Criss were deliberately indifferent to his serious medical needs. The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical

care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs.  Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs.  Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs.  Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later.  The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet.  It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.  Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985).  Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  Id.  Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment."  Estelle v. Gamble, 429 U.S. 97, 107 (1972).  And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference.  Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, Lowe's pleadings and testimony, as well as the medical records which do not contradict his assertions, plainly show that Lowe has received a substantial quantum of medical care. His pleadings and testimony, as well as the medical records, refute any contention that the prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct showing a wanton disregard for any serious medical need.  See Banuelos, 41 F.3d at 235.

The record shows that Lowe was seen repeatedly for his complaints, and that he was given every available anti-depressant, but complained about side effects with each of them. He asked for Wellbutrin, but was told that this medication was non-formulary and that it could not be prescribed for him because of his history of psychosis. The refusal to provide a medication which was medically contra-indicated hardly bespeaks deliberate indifference.

Instead, in an effort to help Lowe, Davenport prescribed every available formulary antidepressant and put in a request for a non-formulary one. She did not refuse to treat him, ignore his complaints, intentionally treat him incorrectly, or take any other action which would clearly evince a wanton disregard for a serious medical need. Although Lowe said at the evidentiary hearing that Davenport gave him Celexa despite knowing that it caused him problems, the medical records show that Lowe had tolerated Celexa reasonably well over a two-year period, and so Davenport determined that it was the best available choice. Since Lowe had complained about side effects associated with every available antidepressant, yet insisted that he needed antidepressants, Davenport was not deliberately indifferent by placing him on a medication which the records showed had worked in the past.

Furthermore, the medical records show that Davenport repeatedly saw Lowe and repeatedly discussed his concerns with him, and that every available antidepressant was tried, as well as different dosages of the medications, in an attempt to find a regimen which would work. Lowe's allegations fall well short of the "extremely high standard" which the Fifth Circuit has set out in deliberate indifference cases, and so his claim against Davenport is without merit.

Lowe also sued Robert Criss, saying that he had contacted Criss about his problems, but was told that it was up to Davenport, the health care provider. Lowe says, and the medical records confirm, that Criss is a licensed professional counselor, while Davenport is a clinical nurse specialist in psychiatric and mental health. As such, it is Davenport who is qualified to make medical decisions, and Criss correctly advised Lowe that it was up to Davenport to do so.

Even if Criss did have supervisory authority over Davenport, Lowe has failed to show a constitutional violation. Lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. Williams v. Luna, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).

In this case, even assuming that Criss had supervisory authority, Lowe has not shown that Criss was personally involved in a constitutional deprivation, that wrongful conduct by Criss was causally connected to a constitutional deprivation, or that Criss implemented a constitutionally deficient policy which was the moving force behind a constitutional deprivation. In addition, the Fifth Circuit has held that absent primary liability, there can be no supervisory liability. Gibbs v. King, 779 F.2d 1040, 1046 n.6 (5th Cir.), *cert. denied* 476 U.S. 1117 (1986). Thus, because Davenport had no primary liability in that her actions were not a constitutional violation, Criss could have no supervisory liability. Nor has Lowe shown that Criss could have primary liability, in that he makes no showing that Criss was deliberately indifferent to his serious medical needs. Lowe's claims are without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. <u>Neitzke v. Williams</u>, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. <u>Neitzke v. Williams</u>, 490 U.S. 319, 327, (1989), *citing* <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); *see also* <u>Blackburn v. City of Marshall</u>, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Lowe's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* <u>Thompson v. Patteson</u>, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. §1915A. It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **18** day of **September, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE